**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000049
20-DEC-2018
08:07 AM**

NOS. CAAP-16-0000049 and CAAP-16-0000050

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
MICHAEL ANGELO CATTANEO, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NOS. 15-1-0023(4) and 15-1-0122(4))


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Reifurth, JJ.)0

Defendant-Appellant Michael Angelo Cattaneo (**Cattaneo**)

appeals from the Judgment of Conviction and Sentence entered on

December 4, 2015 (**Judgment**), in the Circuit Court of the Second

Circuit (**Circuit Court**).[1] Cattaneo pleaded no contest to charges

arising out of two separate cases, which were consolidated for

sentencing. Cattaneo was convicted in Cr. No. 15-1-0023(4) (**Case

1**) of one count of Negligent Homicide in the First Degree, a

violation of Hawaii Revised Statutes (**HRS**) § 707-702.5(1)(b)

_____

[1] The Honorable Richard T. Bissen, Jr. presided.

(2014),[2] and was convicted in Cr. No. 15-1-0122(2) (**Case 2**) of one count of Promoting a Dangerous Drug in the Third Degree, a violation of HRS § 712-1243(1) (2014),[3] and one count of Prohibited Acts Related to Drug Paraphernalia, a violation of HRS § 329-43.5(a) (2010).[4]

Cattaneo raises three points of error on appeal, contending that: (1) the Circuit Court plainly erred when it

---

[2] HRS § 707-702.5 states:

§ 707-702.5 **Negligent homicide in the first degree.** (1) A person commits the offense of negligent homicide in the first degree if that person causes the death of:
(a)  Another person by the operation of a vehicle in a negligent manner while under the influence of drugs or alcohol; or
(b)  A vulnerable user by the operation of a vehicle in a negligent manner.
(2) Negligent homicide in the first degree is a class B felony.

[3] HRS § 712-1243 states:

§ 712-1243 **Promoting a dangerous drug in the third degree.** (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.
(2)  Promoting a dangerous drug in the third degree is a class C felony.

[4] HRS § 329-43.5 states, in relevant part:

§ 329-43.5 **Prohibited acts related to drug paraphernalia.** (a)  It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706-660 and, if appropriate as provided in section 706-641, fined pursuant to section 706-640.

2

focused on unreliable hearsay in conjunction with sentencing in the form of Facebook entries described in a letter attached to the Presentence Diagnosis and Report (**PSI Report**); (2) the Circuit Court plainly erred when it imposed consecutive sentences in this case; and (3) this court should recognize plain error in Cattaneo's sentencing because the State failed to comply with the terms of the plea agreement.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Cattaneo's contentions as follows:

(1)  Cattaneo argues that the Circuit Court plainly erred in sentencing him because it focused on unreliable hearsay in the form of Facebook entries that were described in a letter included in the PSI Report.  Cattaneo submits that the descriptions of his Facebook entries did not have "indicia of reliability" and the Circuit Court violated his right to due process by considering them.

Cattaneo failed to object to the challenged material at his sentencing hearing based on hearsay or any other grounds. "As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases." State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003)

3

(citing State v. Ildefonso, 72 Haw. 573, 584, 827 P.2d 648, 655 (1992) ("Our review of the record reveals that [the defendant] did not raise this argument at trial, and thus it is deemed to have been waived."); State v. Hoglund, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal.")). The same rule applies with respect to the failure to raise a hearsay objection before the trial court. See State v. Crisostomo, 94 Hawai'i 282, 290, 12 P.3d 873, 881 (2000) ("A hearsay objection not raised or properly preserved in the trial court will not be considered on appeal.").

Prior to the sentencing hearing, Cattaneo was provided with the PSI Report and the attachments, which included the letter referencing Cattaneo's Facebook entries. At the beginning of Cattaneo's sentencing hearing, the Circuit Court itself brought the issue up of the letter describing Facebook entries to the parties' attention, noting: "One of the letters [attached to the PSI Report] addressed -- and there were obviously tons of letters from both sides -- mentioned Facebook entries. Did both of you read that letter?" The court asked if there were any objections to the PSI Report, including the addendums. No objections were made. During the sentencing hearing, the prosecutor referred to Cattaneo's Facebook entries, and no objections were made. Prior to announcing its sentence, the

4

Circuit Court specifically asked Cattaneo about what was entered, presumably by Cattaneo, on Cattaneo's Facebook, asking "What is that all about?" Cattaneo responded, "I['m] not sure, your Honor. . . . I have no excuses for my -- my behavior. That's the honest truth. I have no excuses." No objection was made. Cattaneo has not denied that he created the Facebook entries, either in the proceedings below or on appeal.

Cattaneo now argues that the Circuit Court's consideration of the references to the Facebook entries was in error. We conclude that Cattaneo has waived his hearsay objection by failing to timely raise the objection at the sentencing hearing. See Moses, 102 Hawai'i at 456, 77 P.3d at 947. We further conclude that plain error review is not warranted, as no fundamental right is implicated or has been denied. "[O]bjections to the admission of incompetent evidence, which a party failed to raise at trial, are generally not subject to plain error review." State v. Metcalfe, 129 Hawai'i 206, 225, 297 P.3d 1062, 1081 (2013) (citing State v. Wallace, 80 Hawai'i 382, 410, 910 P.2d 695, 723 (1996) ("It is the general rule that evidence to which no objection has been made may properly be considered by the trier of fact and its admission will not constitute ground for reversal. It is equally established that an issue raised for the first time on appeal will not be considered by the reviewing court. Only where the ends of

5

justice require it, and fundamental rights would otherwise be denied, will there be a departure from these principles.") (citation omitted); State v. Uyesugi, 100 Hawai'i 442, 464, 60 P.3d 843, 865 (2002) ("In the absence of an objection and/or proper record, the admission of the testimony and picture does not amount to plain error.")). The Hawai'i Supreme Court has instructed that our "power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system-that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." Metcalfe, 129 Hawai'i at 225 n.9, 297 P.3d at 1081 n.9 (citation omitted). Plain error review of an evidentiary objection that has been waived by the failure of the defendant to object at trial, unless it implicates a fundamental right such as the right to testify, is not appropriate. Id.

(2)  Cattaneo argues that the Circuit Court plainly erred and should not have imposed consecutive sentencing because: (1) Cattaneo was informed that the Circuit Court could impose consecutive sentencing only if there was more than one charge; (2) the potential outcome of sentencing should not be made worse by Cattaneo's agreement to consolidate his pleas and sentencing;

and (3) consecutive sentencing is improper when it is done for unsubstantiated allegations of uncharged conduct.[5]

Cattaneo claims that when he entered his plea he was unaware the Circuit Court could impose consecutive sentencing between the sentences in Case 1 and Case 2 and not merely within each case; he understood that consecutive sentences could be imposed only if there was more than one charge, and only Case 2 had more than one charge. Therefore, Cattaneo argues, his colloquy with the Circuit Court was ambiguous and his pleas were not intelligent, knowing, and voluntary.

> A trial judge is constitutionally required to ensure that a guilty plea is voluntarily and knowingly entered. In determining the voluntariness of a defendant's proffered guilty plea, the trial court should make an affirmative showing by an on-the-record colloquy between the court and the defendant wherein the defendant is shown to have a full understanding of what the plea of guilty connotes and its consequences.

State v. Kealoha, 142 Hawai'i 46, 59, 414 P.3d 98, 111 (2018) (quoting State v. Krstoth, 138 Hawai'i 268, 273, 378 P.3d 984, 989 (2016) (internal quotation marks and citations omitted)). "Manifest injustice occurs when a defendant makes a plea involuntarily or without knowledge of the direct consequences of the plea." Id. (citation omitted).

First, we find Cattaneo's claim that he did not intelligently, knowingly and voluntarily enter his plea is

---

[5] Cattaneo does not argue that the Circuit Court failed to adequately explain why it imposed consecutive sentences or that the court failed to adequately consider the factors required by HRS § 706-606.

without merit. The Circuit Court in its colloquy explicitly elicited from Cattaneo that he understood he would be subject to consecutive sentencing.

> THE COURT: You may also be sentenced to consecutive terms of imprisonment <u>if there is more than one charge</u>. Restitution, a fine, a fee and/or assessment, community service, probation, with a term of imprisonment to be determined by the Court at sentencing . . . . Has that all been explained to you?
>
> [Cattaneo]: Yes, your Honor.
>
> THE COURT: Do you have any questions about the penalty or the punishment you face?
>
> [Cattaneo]: No, sir.

(Emphasis added). Reviewing the Circuit Court's colloquy as a whole, we find no ambiguity in the Circuit Court's unequivocal statement that Cattaneo would be subject to consecutive sentencing if there is "more than one charge." Three charges were being disposed of at the sentencing hearing. Cattaneo was asked if he had any questions and whether it had all been explained. He agreed that it had been explained to him. And again, the court read all three counts to which Cattaneo was pleading guilty and confirmed that both the State and Cattaneo were requesting that "all charges in both cases" would run concurrently.

Cattaneo does not dispute that the Circuit Court had the discretion to sentence Cattaneo to consecutive sentences

8

arising out of two different cases. See HRS § 706.668.5 (2014).[6] For the same reason, Cattaneo's argument that the Circuit Court should not have imposed consecutive sentences because Cattaneo agreed to a consolidated sentencing hearing is without merit; the Circuit Court had the discretion to impose consecutive sentences regardless of whether the sentences were handed down in one proceeding or in separate proceedings. See HRS § 706-668.5(1) ("If multiple terms of imprisonment are imposed on a defendant, whether at the same time or at different times, or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively."). We find no basis to conclude that Cattaneo's pleas were not intelligently, knowingly, and voluntarily entered.

Finally, Cattaneo argues that the Circuit Court's imposition of consecutive sentencing was in error because it based that determination on uncharged alleged misconduct. In

---

[6] HRS § 706-668.5 states, in relevant part:

§ 706-668.5 Multiple sentence of imprisonment. (1) If multiple terms of imprisonment are imposed on a defendant, whether at the same time or at different times, or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively. Multiple terms of imprisonment run concurrently unless the court orders or the statute mandates that the terms run consecutively.

(2) The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706-606.

support, Cattaneo cites State v. Vellina, in which Vellina argued that the court plainly erred in imposing consecutive sentences based on uncharged misconduct alleged by the prosecution at the sentencing hearing. 106 Hawai'i 441, 449-50, 106 P.3d 364, 372-73 (2005). Vellina entered pleas of no contest to burglary and multiple counts of theft. Id. at 443, 106 P.3d at 366. At his sentencing hearing, the State argued for consecutive sentences based, in part, on an unsubstantiated allegation that Vellina had transferred semi-automatic firearms he had acquired in his burglary to a drug dealer in exchange for drugs. Id. at 449-50, 106 P.3d at 373-73. The court imposed consecutive sentences, in part, based on the uncharged conduct and to deter others from taking similar actions in the future. Id. The Hawai'i Supreme Court decided that the circuit court had "unquestionably determined that Vellina had 'transferred' the semi-automatic firearm to a drug dealer and sentenced him with that in mind." Id. at 450, 106 P.3d at 373. The Supreme Court found the circuit court had punished Vellina "for an uncharged crime in the belief that it too deserves punishment." Id. (citing State v. Nunes, 72 Haw. 521, 526, 824 P.2d 837, 840 (1992)). Thus, the circuit court "clearly exceeded the bounds of reason" in sentencing and Vellina's rights were substantially affected, which merited vacating Vellina's conviction under the plain error standard. Id.

10

Here, Cattaneo points to the following statements from the Circuit Court in the sentencing:

> You clearly have no respect for the law. You have no respect for other people. And you probably don't even respect yourself. Because if you did, you wouldn't have the record you have. You wouldn't post the kind of things you posted.

The Circuit Court referenced a Facebook posting by Cattaneo when it stated, "[b]ut when I was reading through this report, and I read the very mean things you said about your neighbors who reported you for not being a responsible dog owner. I mean that just shows more about who you are." The Circuit Court also referenced Facebook postings by Cattaneo referring to police officers:

> I mean that's the way you approach this. As I was saying, your attitude, how -- what you think about police, and you name some particular police officers. I don't know how smart that is of you in your Facebook. What you think of them. How you think you've gotten away with stuff when they didn't catch you for something.
> I mean, and that's in 2013. Some of this is in 2000 -- all this is 2014 you're still writing about how you get away with being at Casanova's and the police not catching you. And giving advice to people how they can avoid the police.

Finally, the Circuit Court asked Cattaneo to explain himself and the attitude he demonstrates online:

> THE COURT: What -- what is that all about?
> THE DEFENDANT: I not sure, your Honor.
> THE COURT: You're not sure.
> THE DEFENDANT: I have no excuses for my -- my behavior. That's the honest truth. I have no excuses. That was in a --
> THE COURT: No. But it's so consistent and it's been for such a long time. Your first OUI was in 2006. You have learned nothing.
> Not only do you drive without your license at times, you drive without insurance. You put even more pressure on the people that you're driving with. You hit them, you have no insurance. And all I'm trying to explain to you is

11

that's the attitude that you seem to display. Not the one you're showing today. The one you show on your Facebook and the ones you show after you get done sentencing.

What is that comment? Oh, I just -- I just got my license back. Time to drink and drive. Time to have a beer. Celebrate.

I mean, I'm telling you that that says a lot about how you think, how you process, and really who you are. And that's significant to the Court.

Based upon our review of the entire sentencing transcript, we conclude that the Circuit Court did not violate the principle of Vellina that the sentencing court cannot make its sentencing decision based on its own finding that the defendant committed uncharged crimes or acts of misconduct and in the belief that those uncharged acts also deserve punishment. Vellina, 106 Hawai'i at 450, 106 P.3d at 373. The Circuit Court's references to Cattaneo's Facebook statements, as explained by the court, were for the purpose of demonstrating that Cattaneo had consistently and over a long period of time displayed an attitude showing he has no respect for other people or the law. The court explained that Cattaneo demonstrated online that previous chances he had been given to reform his behavior were not taken but openly mocked and derided. This time, as emphasized by the court, Cattaneo had taken the life of an innocent bystander. The Circuit Court only used Cattaneo's Facebook statements to show his character and attitude over time.

This case is somewhat analogous to State v. Zimmerman, No. CAAP-13-0000081, 2013 WL 6507550 (Haw. App. Dec. 11, 2013) (SDO), in which this court considered the defendant's claim that

12

the sentencing court erred in considering emails the defendant had sent to his murder victim in fashioning the court's sentence because the emails constituted an uncharged crime. Id. at *1-*2. On appeal, we found the argument was without merit because (1) there was no dispute that the defendant wrote and sent the emails and, more importantly, (2) "the Circuit Court's comments make clear that it was not the criminality of Zimmerman's conduct that it focused on, but how his conduct illuminated the abusive nature of the relationship between Zimmerman and his victim well before the murder was committed." Id. at *2. As in Zimmerman, Cattaneo never disputed that the Facebook posts were in fact his own and, more importantly, the court made clear in its comments that it was not the illegality of the conduct that impacted the court's sentence, but the consistent attitude displayed by Cattaneo towards others, towards law enforcement generally, and towards his past chances at rehabilitation involving similar conduct to which he was pleading no contest.

As noted by the Hawai'i Supreme Court, "a sentencing court may consider any and all accurate information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." Keawe v. State, 79 Hawai'i 281, 286, 901 P.2d 481, 486 (1995). In addition, "the scope of a sentencing judge's inquiry into a defendant's background is very broad and limitations on the kind and/or

13

source of information the court may consider are not lightly imposed." State v. Valera, 74 Haw. 424, 436, 848 P.2d 376, 381 (1993).

We conclude that the Circuit Court properly considered Cattaneo's attitude toward other people, the law, and rehabilitative opportunities in conjunction with its decision to impose a consecutive sentence, and did not base Cattaneo's sentence on uncharged misconduct. There were numerous other factors considered by the court that support the imposition of this sentence. The Circuit Court did not abuse its discretion in sentencing Cattaneo.

(3) Cattaneo argues this Court should find plain error on the grounds that the State failed to comply with the terms of Cattaneo's plea agreement when it provided information to the family and friends of the deceased victim, Karl Hagen, and called them to speak at sentencing; Cattaneo argues the State committed prosecutorial misconduct in so doing.

An allegation that the State has breached a plea agreement is reviewable under Hawaii's plain error doctrine. See State v. Miller, 122 Hawai'i 92, 100, 223 P.3d 157, 165 (2010). Plea agreement violations implicate a defendant's fundamental rights. Id. at 100-01, 223 P.3d at 165-66.

To determine whether a plea agreement was, in fact, breached, we have stated the following:

14

> The touchstone for determining whether a breach of a plea agreement has occurred, however, "is whether the defendant has reasonable grounds for reliance on his interpretation of the prosecutor's promise, and whether the defendant in fact relied to his detriment on that promise." Commonwealth v. Santiago, 394 Mass. 25, 28, 474 N.E.2d 154, 157 (1985). This determination "requires an inquiry into the precise meaning of the language of the agreement as it was understood by the defendant and defendant's legitimate expectations arising therefrom." People v. McCormick, 839 P.2d 474, 479-80 (Colo. App. 1992) (reversed on other grounds).
>
> Furthermore, a plea agreement containing terms that are ambiguous or reasonably susceptible to different interpretations is strictly construed in favor of the defendant. Id. at 480; State v. Wills, 244 Kan. 62, 69, 765 P.2d 1114, 1120 (1988). Even where the state technically complies with every term, a breach of the plea agreement may be found if the spirit of the agreement is breached. State v. Chavez, 130 Ariz. 438, 439, 636 P.2d 1220, 1221 (1981) (defendant granted relief where the state did not violate letter of plea agreement but agreement was based on mutual mistake); Kluttz v. Warden, Nevada State Prison, 99 Nev. 681, 669 P.2d 244 (1983) (breach found where prosecutor did not technically violate any term but implicitly sought sentence in excess of that agreed to in plea agreement by advising sentencing judge that state had entered into plea agreement without knowledge of all salient facts).

State v. Abbott, 79 Hawai'i 317, 320, 901 P.2d 1296, 1299 (App. 1995).

Here, the terms of the plea agreement are not in dispute. As relevant to appeal, in exchange for Cattaneo's agreement to enter pleas of no contest on the three charges for which he was convicted, the State agreed to dismiss the remaining charges in both cases, but it explicitly retained the right to "ask for prison." The State and Cattaneo also agreed to seek concurrent sentencing for all charges. There was no agreement as to a requested term of imprisonment. The Circuit Court confirmed with Cattaneo that this was the substance of the agreement reached. The Circuit Court also confirmed:

15

THE COURT: You checked the box just below that that reads, I know that the Court is not required to follow any deal or agreement between the government and me. I know that the Court has not promised me leniency. Is that right, sir?
THE DEFENDANT: Yes, sir.
THE COURT: What that means is I'm not a party to any agreement. I do not have to follow any agreement. I can impose up to the maximum sentence. You understand that?
THE DEFENDANT: Yes, sir.

Cattaneo argues that the State breached the plea agreement by providing information to witnesses called to testify at the sentencing hearing who used the information to request severe sentencing. Cattaneo specifically points to the testimony provided by Karl Hagen's friend, Robert Sutor (**Sutor**), who testified:

> We consider the circumstances surrounding Karl's death to be particularly egregious and deserving of significant consequences. Some of those were based on the -- the prosecuting attorney reviewed me of those actions.
> Mr. Cattaneo's actions over the last several years have clearly demonstrated that he's a threat to public safety and will pose a threat for many years to come. We only hope that Mr. Cattaneo serves as a minimum the full ten years of incarceration without being paroled.
> Mr. Cattaneo has shown that he is un -- or willing to commit violent crimes without changing his behavior. Mr. Cattaneo should be treated as the violent habitual criminal that he's become.
> We can only hope -- we can only hope that Mr. Cattaneo serves the minimum full ten years. The justice system needs to protect our streets. We need to show that you can't get stoned, get behind the wheel of a 3000 pound vehicle, and kill an innocent person.
> Your Honor, we hope that you do everything in your power to make sure that Mr. Cattaneo serves all the time that he possibly can under the letter of the law.

First, the State's own argument at sentencing complied with the plea agreement. In the plea agreement, the State expressly retained the right to argue that Cattaneo deserved prison time with no limitation other than the State would request concurrent sentences. The State argued, in compliance with its

16

plea agreement, that Cattaneo should be sentenced to ten years in prison for the negligent homicide count and five years on each of the drug counts, all to run concurrently.

We conclude that the provision of information to friends and family of the deceased victim, and the calling of family and friends to voice their thoughts and grief to the court, was not directly or indirectly a breach of the plea agreement. Sutor, for example, only requested that the court sentence Cattaneo to ten years of incarceration without the possibility of parole. This is the maximum time also requested by the State. Robin and Ariel Hagen, Karl Hagen's widow and daughter, asked the court to impose the maximum sentences. Neither Sutor nor any other witness called upon by the State asked for consecutive sentencing. Cattaneo provides no authority that the State cannot share information with the victim's family in preparation for sentencing when the State reaches a plea agreement with the defendant, and we find none.

Cattaneo also argues that the State's calling of individuals who were not the victim's family members to testify also breached the agreement. Cattaneo infers that because HRS § 706-604(3) only provides a right to the family of a homicide victim to be heard at sentencing, then the calling of non-family members contravened the plea agreement. We reject this argument. As explained by the Hawai'i Supreme Court, although HRS §§ 706-

17

602 and 706-604 specifically reference information from family members of the victim, the general principle still holds that:

> A sentencing judge generally has broad discretion in imposing a sentence, and the sentence thus imposed should be tailored to the particular circumstances of a defendant's case. To achieve this end, there is a legitimate need to provide a sentencing judge with complete information about the defendant. Indeed, a sentencing judge is required to consider specific statutory factors in determining the sentence to be imposed. Therefore, the scope of a sentencing judge's inquiry into a defendant's background is very broad and limitations on the kind and/or source of information the court may consider are not lightly imposed.

State v. Barrios, 139 Hawai'i 321, 332, 389 P.3d 916, 927 (2016) (citations and quotation marks omitted; emphasis added)).

We conclude that Karl Hagen's family had the right to testify at the hearing, and the court had the discretion to hear testimony from Karl Hagen's friends in order to fashion an appropriate sentence for Cattaneo. See id. at 332, 389 P.3d at 927. Any expectation that Cattaneo may have had that the State would not argue for the maximum sentence was not reasonable. See Abbott, 79 Hawai'i at 320, 901 P.2d at 1299 (touchstone for determining whether a breach of a plea agreement has occurred "is whether the defendant has reasonable grounds for reliance on his interpretation of the prosecutor's promise") (citation and internal quotation marks omitted; emphasis added). Any expectation that Cattaneo may have had that the State would not call Karl Hagen's friends and family and allow them to argue for the maximum punishment was not reasonable.

18

Cattaneo's contention that the State violated the plea agreement and committed misconduct is without merit.

For these reasons, the Circuit Court's December 4, 2015 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, December 20, 2018.

On the briefs:

Matthew S. Kohm,
for Defendant-Appellant.

Renee Ishikawa Delizo,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

19